IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

THE CURATORS OF THE UNIVERSITY   )
OF MISSOURI,   )
   )
                   Plaintiff,   )
   )
     v.   )   Case No. 2:09-cv-04012-SOW
   )
GALEN J. SUPPES,   )
WILLIAM R. SUTTERLIN,   )
RENEWABLE ALTERNATIVES, LLC,   )
and HOMELAND TECHNOLOGIES, LLC,   )
   )
                Defendants.   )

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants Galen J. Suppes ("Suppes") and Homeland Technologies, LLC

("HT") hereby move for dismissal of the above-captioned case for failure to state a claim over

which this Court has subject matter jurisdiction under 28 U.S.C. §2201, and 28 U.S.C. §1338(a).

Plaintiff's complaint fails to meet the requirements of the Declaratory Judgment Act and the

alleged matter does not arise under the Patent Act.

This is an action in which plaintiff alleges subject matter jurisdiction exists

pursuant to 28 U.S.C. §1338(a) because it involves patent subject matter in the context of a

contractual dispute, including issues relating to the conception and reduction to practice of

inventions for which patent applications have been filed.  However, no violation of any section

of the Patent Act is alleged.  The plaintiff's claims arise under contract law rather than patent

rights.  "Further, the Declaratory Judgment Act is not an independent basis for subject matter

jurisdiction." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008).

Such jurisdiction is limited by Article III of the Constitution, which restricts federal judicial power to the adjudication of "Cases" or "Controversies."  *Id. (citing U. S. Const. Art. III).*

I.      Legal Standard.

The district courts have original, exclusive jurisdiction of any civil action arising under any act of Congress relating to patents under 28 U.S.C. §1338(a).  This jurisdiction extends "only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law."  *Christianson v. Colt*, 486 U.S. 800, 809 (1988).

Additionally, to invoke the Declaratory Judgment Act, there must be a case or controversy.  "For there to be a case or controversy under Article III, the dispute must be definitive and concrete, touching the legal relations of parties having adverse legal interests, real and substantial, and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Id. (quoting MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 771 (2007) (*quoting Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-41, 57 S.Ct. 461 (1937)) (*internal quotations omitted.*).

II.     Contractual rights cannot give rise to subject
        matter jurisdiction under 28 U.S.C. §1338(a).

        A.      Patent assignment and ownership is a matter of contract law.

Subject matter jurisdiction does not arise over patent ownership or enforcement of a contract concerning patent rights pursuant to 28 U.S.C. §1338(a).  *See, e.g., Production Eng'g & Mfg., Inc. v. Barnes*, 424 F.2d 42 (10th Cir. 1970).  A cause of action does not arise under patent law simply because a patent may be the subject matter of the controversy.  *See, e.g.,*

*Ausherman v. Stump*, 643 F.2d 715 (10th Cir. 1981). Rather, subject matter jurisdiction is a question of "the case made and the relief demanded by the plaintiff." *Air Prods. & Chem., Inc. v. Reichhold Chem., Inc.*, 755 F.2d 1559, 1562 (Fed. Cir. 1985). "Interpretation of a contract is a matter of sate law." *Metabolite Labs., Inc. v. Lab. Corp. of Am.,* 370 F.3d 1354, 1369 (Fed. Cir. 2004). "The critical inquiry is whether in fact the complaint asserted a claim arising under the patent laws." *Cedars-Sinai Med. Center v. Watkins,* 11 F.3d 1573, 1577 (Fed. Cir. 1993).

As a result, this Court lacks jurisdiction over a simple contractual dispute involving construction of contract terms familiar to the patent law. S*ee, e.g., American Tel. & Tel. Co. v. Integrated Network Corp.*, 972 F.2d 1321 (Fed.Cir.1992) (presence of contractual terms "invention," "made or conceived," and "make or conceive" insufficient to permit removal of case from state to federal court); *Ballard Medical Prods. v. Wright*, 823 F.2d 527, 530 (Fed.Cir.1987) (that patent issues are relevant to resolution of a contract dispute "cannot possibly convert a suit for breach of contract into one 'arising under' the patent laws"); *Beghin-Say Int'l, Inc. v. Ole-Bendt Rasmussen*, 733 F.2d 1568, 1570-71 (Fed.Cir.1984) (dispute over agreements that may assign future patent applications does not convert conflict into one under federal patent laws). When an invention was conceived is more a question of common sense than of patent law. *American Tel.*, 972 F.2d at 1324.

Here, plaintiff seeks declaratory judgment for determination of ownership and for automatic assignment of inventions created by Defendant Suppes based on an employment agreement and "the rules, orders and regulations" of the University of Missouri set forth in the Collected Rules and Regulations ("Collected Rules") (see Complaint, ¶s 11-14). In addition, plaintiff asserted other state law claims for which supplemental jurisdiction is pled under 28 U.S.C. §1367.

Plaintiff cites to the entire Patent Act to support its allegation of ¶ 40 that a "determination of the date of invention, including the date of conception and the date of reduction to practice, is a question exclusively governed by federal patent law, *specifically* 35 U.S.C. §101 *et seq.*" (*emphasis added*). This *broad* citation demonstrates that the plaintiff could find no support for its allegation because there is no section of the Patent Act which defines these terms or supports plaintiff's allegation. Questions of inventorship, conception and reduction to practice are all defined in common law, rather than by an act of Congress or the Patent Act.

Likewise, plaintiff cites 35 U.S.C. § 261 in ¶ 46 of Count II of its complaint for the notion that "determination of the question of automatic assignment is a matter of federal law." This section of the Patent Act is devoid of any such notion of automatic assignment. 35 U.S.C. §261 provides as follows:

> Subject to the provisions of this title, patents shall have the attributes of personal property.
>
> Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.
>
> A certificate of acknowledgment under the hand and official seal of a person authorized to administer oaths within the United States, or, in a foreign country, of a diplomatic or consular officer of the United States or an officer authorized to administer oaths whose authority is proved by a certificate of a diplomatic or consular officer of the United States, or apostille of an official designated by a foreign country which, by treaty or convention, accords like effect to apostilles of designated officials in the United States, shall be prima facie evidence of the execution of an assignment, grant or conveyance of a patent or application for patent.
>
> An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark

Office within three months from its date or prior to the date of such
subsequent purchase or mortgage.

The real allegation and basis for plaintiff's allegation of Count II is found in ¶ 49
in which plaintiff alleges that it "is entitled to the ownership and assignment of all inventions of
defendants, *as set forth in the Collected Rules and Regulations*" - clearly a contract claim alone.

B.      The relief sought is not a matter of patent law

The following relief is requested of this Court:

1.      the order of an accounting of all inventions created, conceived or reduced
to practice by Suppes since August 1, 2001;

2.      a declaration that all such intellectual property is owned by and the
property of the University;

3.      a declaration that the language in Suppes' employment agreement created
an automatic assignment of all intellectual property created by him to the University;

4.      an order for defendants to account for all revenues or other benefits
received from licenses and/or sales of University intellectual property;

5.      an order for an accounting of all contracts, licenses, agreements, non-
disclosures and/or other arrangements entered into between defendants and third parties with
respect to the University's intellectual property;

6.      an order for defendants to sign any and all documents necessary or
advisable to assign rights or confirm ownership of all inventions to the University;

7.      to enjoin defendants from purporting to license, assign or otherwise
transfer any inventions or other intellectual property that rightfully belongs to the University; and

8.      granting specific performance on all valid contractual employment

obligations.

Not a single request for relief is based on the remedies available under the Patent

Act (*see* 35 U.S.C. §§ 283-285).  All are based on alleged violations of rights under the Collected

Rules and employment agreement.  Therefore, this District Court cannot exercise jurisdiction

under the patent laws over an action where "the gravemen" of the claims pleaded in the

complaint is that defendants wrongfully obtained patent rights over the invention(s) at issue and

that defendants must assign such patent rights to the plaintiff.  *Cummings v. Moore*, 202 F.2d

145, 147 (10th Cir. 1953).


III.     Plaintiff fails to meet the requirements of the Declaratory Judgment Act.

The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction . . . any court
> of the United States, upon the filing of an appropriate pleading,
> may declare the rights and other legal relations of an interested
> party seeking such declaration, whether or not further relief is or
> could be sought.

28 U.S.C. § 2201.  "The Declaratory Judgment Act is not an independent basis for subject matter

jurisdiction." *Prasco*, 537 F.3d at 1335 (*citing Skelly Oil Col, v. Phillips Petroleum Co.,* 339

U.S. 667, 671-72, 70 S.Ct. 876 (1950)).  "Rather it provides a remedy available only if the court

has jurisdiction from some other source." *Id. (citing Cat. Tech. LLC v. TubeMaster, Inc.,* 528

F.3d 871, 879 (Fed. Cir. 2008)).  As set forth above, no federal question has been presented over

which this Court may exercise jurisdiction.  Further, the basic standard for determining if

application of the Declaratory Judgment Act is appropriate is whether "the facts alleged, under

all the circumstances, show that there is a substantial controversy between the parties having

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 1336 *(quoting MedImmune,* 127 S.Ct. at 771).

Considering the totality of the circumstances, plaintiff has not alleged a controversy of sufficient "immediacy and reality" to create a justiciable controversy. To satisfy this standing requirement, "the plaintiff must allege (1) an injury-in-fact, i.e. a harm that is concrete and actual or imminent not conjectural or hypothetical, (2) that is fairly traceable to the defendant's conduct, and (3) redressable by a favorable decision." *Id.* at 1338 (*quoting Caraco Pharm. Labs. Ltd. v. Forest Labs.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008)). "Absent an injury-in-fact fairly traceable to [defendants], there can be no immediate and real controversy." *Id.*

The contractual rights alleged to be violated by defendants, such as "*various patent applications have been abandoned, denied, and/or licensed to third parties without any knowledge on the part of the University,*" are not concrete but conjectural or hypothetical Complaint, ¶ 17. How can the University make this allegation if it is "*without any knowledge*?" And who are the "*third parties*" to which the University refers?

All Counts of the complaint make numerous allegations none of which present a controversy of sufficient "immediacy and reality" to create a justiciable controversy. Supporting allegations in the statement of facts and counts go back over eight years (*see* ¶¶ 9, 10, 15, 17, 18, 19, 20, 22, 23, 25, 26, 27, 28, 31, 32, 34, 35, 39, 46, 52, 53, 71, 72, 75 and 79), failing the immediacy test. HT is under no contractual obligation to the University and is not participating in any activity adverse to the University's interests. At no time has HT threatened or refused to cooperate with the University.

On September 26, 2006, general counsel for the University sent a letter to Suppes demanding that he "cease and desist from licensing, purporting to license or purporting to assign

rights in inventions made during a period of time while [he was] an employee of the University unless or until utilization of the mechanism contained in the University Patent Regulations has resulted in a determination that the University is not the rightful owner of said invention." **Exhibit A, p. 2.** The general counsel for the University indicated that there was no urgency to resolving this issue asking Suppes to "reflect whether *(sic)* upon whether the content of this letter indicates that it would be in your best interest to retain legal counsel before further meetings take place." *Id.* On April 25, 2008, general counsel for the University repeated his demand. **Exhibit B, p. 1.** In each of these demands, the general counsel for the University acknowledged that it has a procedure to determine ownership of inventions, which is the University Patent Regulations.

On four separate occasions, Suppes offered to resolve these invention issues through arbitration, which would be binding on both Suppes and HT. **Exhibit C**. Each time the University refused to arbitrate. Finally, following the procedures of the University, Suppes filed a Grievance on January 2, 2008, more than a year before the present case was filed. **Exhibit D**. Even after filing the Grievance, Suppes again tried to resolve these issues by arbitration. The day before the Grievance Committee was scheduled to meet, this case was filed, thereby abruptly terminating the grievance process. **Exhibit E**. The University's behavior over several years shows that there is no immediacy or reality by which a justiciable controversy is created. Furthermore, repeated offers by Suppes (and HT) to abide by the decision of any arbitration illustrates that the parties are not adverse and that there is truly no controversy.

Finally, Suppes has assigned rights in the "certain inventions" to the University, as admitted in ¶ 32 of the Complaint. Thus any failure by the University to accept these assignments cannot be fairly traceable to defendants' behavior, but its own behavior.

Accordingly, based on these allegations and the relief sought, it is not clear what damages or redress the plaintiff is seeking based on any conduct of defendants, failing the third prong of the standing requirement.

IV.     Conclusion.

Plaintiff's allegation that subject matter jurisdiction exists for this cause of action under 28 U.S.C. §1338(a) is misplaced. The fact that plaintiff's claims relate to patent subject matter in the context of a contractual dispute cannot establish subject matter jurisdiction over these claims. Accordingly, since the plaintiff's claims arise under contractual law rather than patent law, this case should be dismissed for lack of subject matter jurisdiction. Further, when the totality of the circumstances is considered, plaintiff's claims fail to meet the requirements of the Declaratory Judgment Act.

Accordingly, defendants Suppes and HT request dismissal of this action as to all counts.

Respectfully submitted,

*/s/ James J. Kernell*
James J. Kernell, #48850
Lara L. McInerney, #60093
ERICKSON, KERNELL, DERUSSEAU
& KLEYPAS, LLC
800 West 47th Street, Suite 401
Overland Park, Kansas 66211
Telephone: 816-753-6777
Facsimile: 816-753-6888
E-Mail: jjk@kcpatentlaw.com

Attorneys for defendants
Galen J. Suppes and
Homeland Technologies, LLC